THE STATE *ex rel.* McCAMPBELL, *Appellant*, v. THE COUNTY COURT OF HOWARD COUNTY.

1. **Dramshop Act:** SIGNERS OF APPLICATION: MEANING OF WORDS, "ASSESSED TAX-PAYING CITIZENS." It is incumbent on the county court, in determining, under Revised Statutes, section 5442, as amended by act of the General Assembly of 1883 (Acts p. 86), whether

a petition presented for a dramshop license is signed by a majority of the assessed tax-paying citizens, as required by said act, to count married and single women who reside in the city or town and own property in their own right.

2. ———— : ———— : ————. Minors residing in the city, who own property therein and are regularly assessed, are also to be counted in the number of signers.

8. ———— : ———— : ————. Citizens residing outside of the city, although owning property therein and regularly assessed, are not to be counted.

*Appeal from Howard Circuit Court.*—HON. G. H. BURCKHARTT, Judge.

*Mandamus.*

WRIT DENIED.

*S. C. Major* and *H. W. Cockerill* for appellant.

(1) The three points submitted in the cause for decision involve but one question, viz: a judicial construction of the word *citizen*, as used in the connection, "tax-paying citizens," in the dramshop act of March 24, 1883, pp. 86, 87 and 88. The word citizen in said act is used in its general sense and means one qualified to vote and hold public office. Bouvier's Law Dict. ; also Webster's dictionary. Words and phrases must be taken in their plain, ordinary and usual sense. R. S., sec. 3126. (2) The word citizen, as used in the other statutory provisions, does not include women and children. R. S., secs. 5921, 5987, 7030, 4380-1-2-3-4. The loss of citizenship, by reason of conviction of certain offences, imposed by our criminal statutes (R. S., secs. 1416, 1467, 1675 and 1378), is specially defined as forever disqualifying from voting at any election, or holding any office of honor, profit or trust in this state. (3) The fact that the legislature added to the word " taxpayers " the word citizen, shows it intended to qualify the former

word ; it meant citizen taxpayers, that class of tax-payers entitled to vote and to hold office, and in whom the sovereignty of the state is vested.  (4) Persons residing outside of the city limits, and who own property in the city, and who are regularly assessed, cannot be counted in ascertaining who are tax-paying citizens.   Such persons, while taxpayers of the city, are not tax-paying *citizens*.

*Thomas Shackleford, Draffen & Williams* and *B. G. Boone*, Attorney General, for respondent.

(1)  Women and minors are assessed tax-paying citizens within the meaning of the dramshop act.  In construing a law words are to be taken in their ordinary grammatical sense, unless such a construction would be obviously repugnant to the intention of the framers of the instrument.  " Statutes are to be read according to the natural and obvious import of their language."  Words are to be given their usual and ordinary meaning, and where the meaning of the language is plain there is no room for construction.  Sedg. on Stat. and Const. Law, 260 ; *Martin v. Hunter's Lessees*, 1 Wheat. 326 ; *Clark v. City of Utica*, 18 Barb. 451. The language of the statute is broad enough to include women and minors, who are resident taxpayers.  They are " citizens."  Web. Un. Dict., defi. of " citizen ; " 1 Bouv. Law Dict. 275 ; *Minor v. Happersett*, 21 Wall. 162 ; *Van Volkenburgh v. Brown*, 43 Cal. 43; *Spencer v. Board of Registration*, 29 Am. Rep. 582 ; *Luhrs v. Eimer*, 80 N. Y. 171.   It will be seen, by an examination of the legislation of this state, that the term " citizen," as used in our laws, includes women and minors, and when the intention has been to limit the meaning of the word to a *particular class* of citizens it has been so expressed. Const., art. 8, sec. 2 ; 1 R. S. 466.  (2)  There is nothing in the object and purpose of the law which would be defeated by the construction for which we

contend. The fact that in every case it is necessary to obtain the consent of a majority of the tax-paying citizens of the block where the dramshop is to be located indicates plainly that the object was to protect *property owners* against injury that would result to their property rights from having a saloon at their doors. *Austin v. State*, 10 Mo. 591.

Norton, C. J.—It is provided in the Acts of 1883, p. 86, as follows: "Sec. 5442. It shall not be lawful for any county court in this state, or clerk thereof, in vacation, to grant any license to keep a dramshop in any town or city containing twenty-five hundred inhabitants or more, until a majority of the *assessed tax-paying citizens* in the block or square in which the dramshop is to be kept, shall sign a petition asking for such license to keep a dramshop in such block or square in such town or city, nor in any city containing less than two thousand five hundred inhabitants, nor in any incorporated town or municipal township, until a majority, both of the *assessed tax-paying citizens* therein, and in the block or square in which the dramshop is to be kept, shall sign a petition asking for such license to keep a dramshop therein, which said petition shall be filed in the office of the clerk of the county court, and by said clerk laid before the court at the first term thereafter, and be renewed on the fourth day of July every year thereafter; and in default of the renewing of said petition, said court or clerk shall have no power to issue such license thereafter, until the same is renewed."

The questions presented by the record before us involve a construction of the above act and are as follows : (1) Is it incumbent on the county court, in determining whether a petition presented for dramshop license in a town, or city, is signed by a majority of the assessed tax-paying citizens, to count married or single

women who reside in the city or town, and own property in their own right, and who are assessed thereon by the regular assessors of the city at the last assessment? (2) Are minors, resident in said city, who have guardians and who own property, and are regularly assessed, to be counted? (3) Are citizens, residing outside of the city and who own property in said city, and are regularly assessed, to be counted?

The solution of these questions depends upon the meaning to be given to the word "citizens," and in ascertaining that, the usual canons of construction with reference to the construction of statutes must be applied. One of these rules is that statutes are to be read according to the natural and obvious import of the words without resorting to subtle, or forced constructions for the purpose of either limiting or extending their operation. "The fundamental reason for this rule * * * is to be found in the consideration, that, unless courts as a general thing construe language in the same sense in which it is used by the legislature, that is, according to the ordinary and natural import, it would be in vain to attempt to preserve any harmony between these two great coördinate departments of government, and the contrary doctrine would open the door to intolerable looseness of construction." Sedg. on Stat. Law, 220. This rule of construction forbids us to accept the proposition, so earnestly and ingeniously contended for by counsel for relator, viz: that the word citizens, as used in the above section, only includes such male citizens as have the right to vote. To give the word this meaning would be in plain disregard of the rule, by restricting its application to a fractional part of the persons falling within the customary and usual meaning of the term citizen. If the legislature intended this, their intention could, and doubtless would, have been unmistakably expressed by making the section read "assessed tax-paying voters," instead of "assessed

SUPREME COURT OF MISSOURI.

tax-paying citizens;" this they have not done, and we cannot, by construction, expunge the word citizens as the legislature has written it, and write in its place the word voters.

A citizen is defined by Webster to be: "A person native or naturalized who has the privilege of voting for public officers, and who is qualified to fill offices in the gift of the people; also every native born or naturalized person of either sex who is entitled to full protection in the exercise and enjoyment of the so-called private rights." Bouvier's definition of a citizen, in American law, is: "One who, under the constitution and laws of the United States, has a right to vote for representatives in congress and other public officers, and who is qualified to fill offices in the gift of the people. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside." Abbott defines it thus: "A person who owes allegiance to, or may claim reciprocal protection from, a government. One who is a member of a nation or of the body politic of a sovereign state. * * * Age or majority is not involved. The most important political rights are not, indeed, acquired until the age of twenty-one; but it is not the possession of these which constitute citizenship, nor is citizenship in abeyance while they are. * * * Nor is sex involved. Women are citizens fully and truly as men; * * * nor does a recognition of women's citizenship involve a grant of political rights, such as are, indeed, usually conferred only upon citizens, but do not inhere in that status." *United States v. Anthony*, 11 Blatchf. 200: *Minor v. Happersett*, 21 Wall. 162; *United States v. Reese*, 92 U. S. 214; 1 McArthur, 169; 1 Abb. Dict. 223; *Van Volkenburgh v. Brown*, 43 Cal. 43. Accepting the definition put upon the word citizen by the highest authority, we must return an affirmative answer to the first two questions propounded by the record.

If the design of the legislature in requiring a petition, signed by a majority of the assessed tax-paying citizens, to be presented as a condition precedent to the exercise by the county court of the power to grant a license to keep a dramshop in a block of a city containing twenty-five hundred or more inhabitants, was to afford protection to that extent to the property in the block, no reason is perceived why the word citizen should be restricted in its meaning only to those who are voters, inasmuch as the property of women and minors would be affected as well as that of the citizen clothed with the privilege of voting. If the location of a dramshop in such a block would affect injuriously the property, as to rental value, or otherwise, belonging to a citizen voter, it would also affect in the same way that owned by women and minors, both of which classes would be denied the protection the statute was designed to afford, if we put the construction upon the word citizen the relator's counsel contend for. We think it cannot be reasonably urged that when one citizen entitled to vote owns but one lot in a block, and all the rest of the block is owned by women, either married or single, or minors to the number of twenty, and all of whom are assessed thereon, that a petition signed by the one citizen would be a majority, in the sense of the statute, of the assessed tax-paying citizens, and that the county court would be bound to act upon, and close their eyes on the assessment list, disclosing the fact that these twenty other assessed tax-paying citizens owned property in the block. And yet such would be the result under the construction contended for by relator. The case of *State ex rel. Fitzpatrick v. Meyers*, 80 Mo. 601, returns a negative answer to the third and last question stated in the foregoing part of this opinion.

The peremptory writ will be and is hereby denied. All concur.